# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 21-816V

| | |
|---|---|
| LINDA GARCIA,<br><br>　　　　　　Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　Respondent. | Chief Special Master Corcoran<br><br><br>Filed: January 8, 2025 |

*Michael A. Baseluos*, Baseluos Law Firm, PLLC, San Antonio, TX, for Petitioner.

*Meghan Murphy*, U.S. Department of Justice, Washington, DC, for Respondent.

### **RULING ON ENTITLEMENT**[1]

　　On January 28, 2021, Linda Garcia filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that as a result of an influenza ("flu") vaccine she received on October 26, 2020, she suffered a right shoulder injury related to vaccine administration ("SIRVA") as defined by the Vaccine Injury Table (the "Table"). Petition (ECF No. 1) at Preamble. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this ruling and decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means this Ruling/Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find that Petitioner has carried her burden of proof in establishing that she suffered a Table SIRVA injury, and therefore is entitled to compensation.

## I. Relevant Procedural History

This claim was initiated on January 28, 2021, and relevant medical records were included with the Petition. (ECF No. 1). Throughout the pendency of this matter, Petitioner continued to file updated medical records as well as affidavits from Petitioner's family members supporting her claim. On February 8, 2023, Petitioner filed the instant motion for a ruling on the record, before Respondent had a chance to provide his formal assessment. (ECF No. 48). Respondent filed a motion to amend the schedule on February 21, 2023, indicating that he had finished his review of the records and wished to discuss informal resolution with Petitioner on the matter. (ECF No. 49). The parties, however, were unable to reach a settlement and Respondent was ordered to respond to Petitioner's motion on April 28, 2023. Respondent filed his response brief on May 12, 2023 (ECF No. 59), and Petitioner filed her Reply on June 5, 2023. (ECF No. 61). The matter is now ripe for disposition.

## II. Relevant Medical History

### A. Medical Records

Petitioner's pre-vaccination medical history reveals no evidence of right shoulder pain or dysfunction. On October 26, 2020, Petitioner received a flu vaccine in her right deltoid at a Walgreen's Pharmacy in San Antonio, Texas. Ex. 1 at 1; Ex. 14 at 3. Petitioner first sought medical attention 18 days later on November 13, 2020, when she went to San Antonio Spine complaining of a two-week history of sudden onset of right biceps/triceps pain. Ex. 3 at 1. An examination revealed that her range of motion ("ROM") and strength was decreased. She was advised to use ice and Voltaren gel to manage her pain, and an MRI was ordered. *Id.*

Petitioner underwent an MRI on November 30, 2020, and it revealed a full-thickness tear of the distal supraspinatus tendon with fluid in the subdeltoid bursa and impingement upon the subacromial space and rotator cuff with fluid in the subacromial bursa. Ex. 3 at 4. Thereafter, Petitioner was referred to an orthopedist.

On December 15, 2020, Petitioner saw Dr. Casey Taber, an orthopedist, complaining of right shoulder pain for about the last six to eight weeks, rating her pain at 8/10. Ex. 13 at 42. Dr. Taber diagnosed Petitioner with a full thickness rotator cuff tear

2

and bursitis of the right shoulder and began the process of planning for surgery. Ex. 5 at 1.

On January 8, 2021, Petitioner underwent a right shoulder arthroscopy performed by Dr. Taber, and his post-operative diagnoses were right shoulder full thickness rotator cuff tear, impingement with bursitis, acromioclavicular joint arthritis, and bicipital tenosynovitis. Ex. 5 at 12. Petitioner returned to Dr. Taber on January 19, 2021, for a post-surgery follow-up, where she was assigned to physical therapy ("PT"). Ex. 13. At 9.

Petitioner began PT on February 1, 2021. On June 1, 2021, and after 28 sessions, Petitioner still had complaints of joint mobility, decreased ROM in her right shoulder, and pain, which impacted her ability to perform activities of daily living. Ex. 13 at 50. In total, Petitioner attended 41 PT sessions, ending on August 19, 2021. During a telemedicine visit on July 8, 2021, DR. Taber diagnosed Petitioner with post-operative adhesive capsulitis and ordered an MRI, which confirmed no further rotator cuff tear, no major bursitis, and no significant adhesive capsulitis. Ex. 13 at 62. At Petitioner's final PT session, it was noted that her active ROM and strength had improved to within functional limits, and she was discharged with a home exercise plan ("HEP"). Ex. 26 at 18.

Petitioner returned to Dr. Taber on October 8, 2021, complaining of right shoulder pain and limited ROM. Ex. 25 at 1. She was diagnosed with post-operative adhesive capsulitis. Dr. Taber administered a cortisone injection in her right shoulder and instructed Petitioner to continue with her HEP exercises. *Id.* at 3. Petitioner also attended three additional PT sessions in October and November 2021.

Petitioner next saw Dr. Taber on January 25, 2022, approximately one-year post surgery, again with complain of right shoulder pain and limited ROM. Ex. 25 at 6. Dr. Taber discussed the possibility of a second shoulder surgery and administered a second cortisone injection. *Id.* Similarly, Petitioner again saw Dr. Taber on April 26, 2022, which a third steroid injection was administered. Ex. 31 at 3. Dr. Taber noted that it was likely Petitioner had reached maximum improvement in her shoulder absent a second surgical procedure, noting that there would "likely be a permanent restriction and tightness unless she elected to proceed with another surgery." *Id.* at 4. Petitioner received a fourth steroid injection on August 30, 2022. Ex. 33 at 4.

Petitioner saw Dr. Taber again on October 11, 2022, complaining of acute onset right shoulder pain that radiated into her lower arm. Dr. Taber noted that while Petitioner did have some continued ROM restrictions, the current examination was "most consistent with cervical radiculopathy and likely involvement of C5-6." Ex. 37 at 2. X-rays were taken on that same day which revealed diffuse spondylosis with the most significant arthritic

changes at the C4-5 and C5-6 level. *Id.* He further noted that although Petitioner had suffered post-operative adhesive capsulitis and continued to have some restrictions, her ROM had improved and that she was not experiencing a lot of pain. He prescribed Petitioner Flexeril and a Medrol dosepak and referred Petitioner to PT for neck motion and mobility. *Id.*

Petitioner attended one PT session before returning to Dr. Taber on November 8, 2022, complaining of the same symptoms as before. Dr. Taber again distinguished her current cervical radiculopathy from her previous adhesive capsulitis, but that she may be faced with permanent restrictions in motion and permanent pain or discomfort at this point. Ex. 37 at 12.

Petitioner's final visit with Dr. Taber was on January 10, 2023. Again, Dr. Taber indicated that he believed her post-operative adhesive capsulitis was likely permanent absent surgical intervention. Ex. 38.

### B. Witness Evidence

Petitioner has submitted four witness statements from four individuals in support of her claim. The first, a declaration, is from Petitioner, and was executed on January 28, 2021. Ex. 36. In it, Petitioner describes how she experienced pain after receiving her flu vaccination and how she had difficulty sleeping at night, bathing, and going to the bathroom without assistance. She goes on to describe that she can no longer perform many activities she previously enjoyed such as playing with her grandchildren, cast a fishing rod, or do Zumba exercise classes.

The second, an affidavit executed on January 29, 2021, is from Ramon Garcia, Petitioner's husband. Ex. 30. He describes how within 24 hours of Petitioner receiving the flu vaccination, she began to complain of pain and an inability to raise her right arm. He also describes how Petitioner had difficulty performing daily activities such as driving and getting dressed and how he had to assist her.

The third, executed on January 29, 2021, is from Jennifer Garcia, Petitioner's daughter. Ex. 30-2. She indicates that she saw Petitioner the day after the flu vaccination holding her arm and asked what was wrong, and Petitioner indicated her shoulder hurt and she was having a hard time lifting her right arm. She also describes how she noticed Petitioner having difficultly doing daily activities such as washing dishes and sweeping the house, and that she had to help her mom comb her hair.

The final declaration, executed on June 16, 2022, is from Ramon Garcia, Jr., Petitioner's son. Ex. 32. He states that Petitioner was unable to lift or reach for things after she received her flu vaccination due to pain. He also states that he works for a pharmacy, has administered flu vaccinations before, and that after she received the vaccination his mother asked if it was normal to be in as much pain as she was.

### III. Parties' Respective Arguments

Petitioner argues that the medical records and affidavits support her claim that her shoulder pain began within the 48 hours of receiving the vaccination. (ECF No. 48). The record, she contends, demonstrates that all applicable QAI's have been met and all elements of a Table SIRVA are established. *Id.* Respondent argues that Petitioner has failed to prove that her pain occurred within 48 hours of vaccine administration. (ECF No. 59).

### IV. Applicable Law

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### V.    Analysis

#### I.    Fact Findings – Onset and Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the

duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that he suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation, or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury.  *See* § 11(c)(1)(A)(B)(D)(E).

7

contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381 at 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184 at 204 (2013) (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### A. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence supports the conclusion that Petitioner has satisfied the Qualifications and Aids to Interpretation ("QAI") requirements for a Table SIRVA.

#### 1. Petitioner has no Prior Left Shoulder Condition or Injury

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). Here, there is no evidence that Petitioner suffered from right shoulder pain before her October 26, 2020 vaccination. Respondent has also not made any argument suggesting he believes that Petitioner had a prior right shoulder condition or injury. Accordingly, Petitioner has met the first QAI requirement.

#### 2. Pain Occurs with the Specified Timeframe (Onset)

Regarding the onset of Petitioner's pain, in order to meet the definition of a Table SIRVA, a petitioner must show that she experienced the first symptom or onset within 48 hours of vaccination (42 C.F.R. § 100.3(a)(XIV)(B)) and that her pain occurred within that same 48-hour period (42 C.F.R. § 100.3(c)(10)(ii) (QAI criteria)).

Respondent's sole objection to entitlement rests on the argument that Petitioner has failed to establish that her right shoulder pain began within 48 hours of vaccination, citing to the contemporaneous medical records. Respondent points to three medical records to argue this point. At her first post-vaccination visit on November 13, 2020, Petitioner reported that her pain began "two weeks prior" which would place onset four days after vaccination. Then, at her first orthopedic visit with Dr. Taber on December 15, 2020, she reported that onset was "last month (11/01/20) which would place onset five days after vaccination. Response at 6. Records from this same visit also indicate that Petitioner had indicated her shoulder pain had been present for "about 6 to 8 weeks." Ex. 13 at 153. Respondent argues that six weeks prior to this visit was eight days post-vaccination, and eight weeks prior was six days before vaccination. Response at 2 n.3. Finally, Respondent argues that although medical records from visits on November 13, 2020, and December 4, 2020, establish that Petitioner reported shoulder pain, she never attributed it to her earlier vaccination, but merely that she had shoulder pain that began two weeks prior to November 13, 2020. *Id.* at 7.

Notwithstanding Respondent's request to interpret these medical records in the most strictly literal sense, I find that the information contained within the records is

sufficient to establish onset within 48-hours, and that this finding is buttressed by the affidavits submitted by Petitioner and her family. When Petitioner first saw Dr. Taber, for example, she placed the start of her symptoms at six to eight weeks prior. Although Respondent notes the literal dates of six and eight weeks prior to place onset outside of 48 hours, he ignores that this range of time would *include* October 26-28, 2020, when onset would be appropriate under the Table. That Dr. Taber later recorded the onset of symptoms reported at this visit as November 1, 2020, does not appear to have anything to do with a specific date offered by Petitioner, and rather likely reflects choosing a convenient date (the first of the month) within the timeframe reported by Petitioner.

Similarly, Respondent's argument against Petitioner's reporting of symptoms as being two weeks prior at her November 13, 2020, medical appointment relies on a records reading that is far too literal. Petitioner never reported a specific date that would place onset outside of the 48-hour window. It is likely that Petitioner offered an approximation of the start of her symptoms because she did not anticipate the need for precise specificity of onset. Reporting an onset of pain as two weeks could just as easily be interpreted to be "approximately two weeks," which would then place onset within the proper timeframe.

Overall, and upon review of the record as a whole, I find that Petitioner has provided adequate support to establish the onset of her shoulder pain likely occurred within 48 hours of vaccination. The records reflect a consistent account of pain beginning shortly after receipt of the October 26, 2020 vaccination, albeit occasionally in a somewhat vague manner. Further, Petitioner has offered affidavit evidence from herself, her husband, and two children which all speak to Petitioner experiencing pain and difficultly moving her right arm the day after vaccination. Accordingly, Petitioner has established onset in the specified timeframe.

### 3. Petitioner's Pain and Limited Range of Motion was Limited to her Right Shoulder

The specific language of a SIRVA injury contained in the QAI of the Vaccine Injury Table is that "pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered." 42 C.F.R. § 100.3(c)(10)(iii) (QAI criteria)). Upon review of the record, it appears that Petitioner's pain and limited ROM was limited to her right shoulder, from the time shortly after vaccination in October 2020, to at least approximately October 11, 2022, when Petitioner complained of right shoulder pain which radiated into her lower arm and Dr. Taber diagnosed her with cervical radiculopathy. X-rays taken from that visit also showed diffuse spondylosis with the most significant arthritic changes at the C4-5 and C5-6 level. Ex.37 at 2. Thus, for approximately two years, Petitioner's pain was limited to only her right shoulder. Respondent also has not offered

*any* argument to suggest that Petitioner has failed to carry her burden in establishing this QAI criteria. Therefore, Petitioner has met the third QAI requirement.

### 4. There is No Evidence of Another Condition or Abnormality

The last criterion for a Table SIRVA states that there must be no other condition or abnormality which would explain Petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Once again, there is insufficient evidence in the record to suggest an alternative cause of Petitioner's right shoulder issues and Respondent does not argue that there is any evidence of another condition or abnormality. At most, Dr. Taber attributed more recent right shoulder pain experienced by Petitioner to cervical radiculopathy rather than her post-surgical adhesive capsulitis. Ex. 37 at 2. However, Dr. Taber had also noted that Petitioner's adhesive capsulitis would likely impose permanent restrictions in motion and permanent pain absent a second surgical procedure. *Id.* at 12. At most, the question of how much Petitioner's lasting pain and reduced ROM is attributable to one condition versus the other is a matter to be considered in deciding damages. There is no serious contention that Petitioner's initial symptoms were brought on by anything other than her vaccination. Accordingly, I find that Petitioner has satisfied the fourth QAI requirement for entitlement.

### B. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). The overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly in her right shoulder on October 26, 2020. Ex. 1; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Petition at 4; Section 11(c)(1)(E) (lack of prior civil award).

As stated above, I have found that the onset of Petitioner's right shoulder pain was within 48 hours of vaccination. *See* 42 C.F.R. § 100.3(c)(10)(ii) (setting forth this requirement). This finding also satisfies the requirement that Petitioner's first symptom or manifestation of onset occur within the time frame listed on the Vaccine Injury Table. 42 C.F.R. § 100.3(a)(XIV)(B) (listing a time frame of 48 hours for a Table SIRVA following receipt of the influenza vaccine). I have also found that Petitioner's pain and reduced range of motion was limited to her right shoulder. 42 C.F.R. § 100.3(c)(10). Finally, I find that there was no condition or abnormality that would explain Petitioner's symptoms after vaccination. *Id.* Therefore, Petitioner has satisfied all requirements for a Table SIRVA.

The last criteria which must be satisfied by Petitioner involves the duration of her SIRVA. For compensation to be awarded, the Vaccine Act requires that a petitioner suffer the residual effects of his or her left shoulder injury for more than six months or required surgical intervention. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement). Starting from September 24, 2016 (48 hours after vaccination), the records undoubtedly demonstrate that Petitioner suffered the residual effects of her shoulder injury for more than six months. Thus, this requirement is also met.

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

## Conclusion

**In view of the evidence of record, I find Petitioner is entitled to compensation. A damages order will be entered following the issuance of this ruling to direct the parties of the next steps in resolving damages.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master